1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

JAMES HELDT,

Plaintiff,

v.

GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA,

Defendant.

Case No. 16-cv-00885-BAS-NLS

**ORDER:**

**(1) DENYING PLAINTIFF'S
    MOTION TO REMAND; AND**

**(2) GRANTING DEFENDANT'S
    MOTION TO DISMISS**

**[ECF Nos. 15, 16]**

Plaintiff James Heldt commenced this action in state court against Defendant Guardian Life Insurance Company of America. As part of his employment, Plaintiff participated in a group insurance plan that provided long-term disability insurance benefits. He is now suing the administrator of the plan, Defendant, for breaching the plan and allegedly disclosing his confidential medical information without his consent.

Defendant removed this action to federal court, arguing this case arises under the Employee Retirement Income Security Act of 1974 ("ERISA"). The parties have since filed competing motions that dispute whether ERISA is applicable. Plaintiff seeks an order remanding this action to state court on the basis that this Court lacks subject matter jurisdiction over the dispute because ERISA does not apply. (ECF No. 16.) Separately, Defendant moves to dismiss Plaintiff's claims on the grounds that

ERISA applies to this case and therefore preempts all of Plaintiff's state law causes of action. (ECF No. 15.)

The Court finds these motions suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the following reasons, the Court **DENIES** Plaintiff's motion to remand and **GRANTS** Defendant's motion to dismiss.

## I.   BACKGROUND

### A.   Plaintiff's Allegations

Plaintiff alleges he was covered by a group insurance plan administered by Defendant that provided long-term disability insurance benefits. (Compl. ¶ 14.) At some point, Plaintiff submitted a claim to Defendant for disability benefits under the insurance policy. (*Id.*) As part of the disability claims process, Plaintiff provided confidential information to Defendant, "including his name, personal information, social security number, age, address, and health information." (*Id.*)

In April 2015, Defendant hired "a private investigator to conduct a 1-2 day surveillance of Plaintiff." (Compl. ¶ 17.) Plaintiff's file with Defendant allegedly "contains a surveillance report and surveillance video purportedly prepared in April 2015 by the private investigator hired by [Defendant]." (*Id.*) This report contains a description of Plaintiff's medical diagnosis and other medical information. (*Id.*)

In early June 2015, Shaunte W. Austin, a Disability Management Coordinator with Select Medical in Birmingham, Alabama, contacted Plaintiff. (Compl. ¶¶ 10, 18.) Ms. Austin informed Plaintiff that Defendant had requested Select Medical perform a functional capacity evaluation on Plaintiff—an examination that evaluates Plaintiff's capacity to perform work-related activities. (*See id.*) This evaluation was to be conducted at Select Physical Therapy, a division of Select Medical located in San Diego, California. (*Id.* ¶¶ 9, 18.)

1      Ms. Austin then allegedly asked Plaintiff "personal medical questions that she

2 represented" were part of a questionnaire for the functional capacity evaluation.

3 (Compl. ¶ 18.) She requested Plaintiff "send confidential medical documentation as

4 to his condition with her." (*Id.*) Plaintiff requested an accommodation for the

5 evaluation on account of his disability, and Ms. Austin allegedly represented that she

6 was working with Defendant and had the authority to facilitate Plaintiff's request.

7 (*Id.*) Plaintiff therefore provided her with "protected medical information and

8 documentation." (*Id.*) He asserts he "had an expectation he was working with

9 [Defendant] and was not revealing private information to a party with no duty to

10 protect such information." (*Id.*)

11      Thereafter, Ms. Austin allegedly forwarded two e-mails from Plaintiff to one

12 of Defendant's employees who is a Vocational Rehabilitation Specialist on the

13 Professional Resources Team in Defendant's Group Life, Absence, and Disability

14 Management Solutions Department. (Compl. ¶¶ 8, 19.) This employee then

15 forwarded the e-mails to two other employees, a Long Term Disability Claims

16 Administrator and a Long Term Disability Consultant. (*Id.* ¶¶ 4–5, 19.) The e-mails

17 allegedly contained "medical information and discussion of a phone call from Austin

18 to Plaintiff during which medical information was requested." (*Id.* ¶ 19.)

19      In addition, Plaintiff alleges one of Defendant's employees sent to Select

20 Physical Therapy the aforementioned surveillance report on Plaintiff. (Compl. ¶ 20.)

21 Plaintiff alleges the "individual in the surveillance video taken by [Defendant's]

22 private investigator is not Plaintiff." (*Id.*)

23      Plaintiff states he "reported to Defendant the unauthorized release of Plaintiff's

24 confidential medical and personal information to Austin and Select Physical Therapy.

25 In response, Defendant did nothing." (Compl. ¶ 21.) Further, after he reported to

26 Defendant the "improper disclosure of Plaintiff's medical and personal information,

27 Plaintiff alleges that Defendant, rather than investigate the breach, wrongfully

28 terminated Plaintiff's policy with Defendant on or about June 14, 2015." (*Id.* ¶ 22.)

16cv0885

1    Based on the foregoing, Plaintiff brings claims against Defendant for: (1)
2 violation of California's Confidentiality of Medical Information Act, Cal. Civ. Code
3 §§ 56–56.37; (2) breach of contract; (3) negligence; and (4) invasion of privacy.
4 (Compl. ¶¶ 23–59.)

5

6    **B.    The Policy**

7    In support of its position that ERISA applies to this dispute, Defendant submits
8 the following. Plaintiff was an employee of M Resort, and he therefore participated
9 in M Resort's employee welfare benefit plan. (Heffelinger Decl. ¶¶ 2–3, ECF No. 15-
10 2.) Defendant issued an Employer Rider ("Policy") to M. Resort under Group Plan
11 Number G-00439083-IC that was in effect during the events underlying this action.
12 (*Id.* ¶ 1, Ex. 1.) The Policy provides for, among other things, disability income
13 replacement coverage to participants in the employee welfare benefit plan. (*See*
14 *generally* Policy, ECF Nos. 15-4 to 15-5.) Further, the Policy expressly provides
15 employees are "entitled to certain rights and protections under the Employee
16 Retirement Income Security Act of 1974 (ERISA)." (*Id.* at 135.)

17

18   **II.   ANALYSIS**

19    **A.    Subject Matter Jurisdiction**

20    Plaintiff moves for an order remanding this action to state court for lack of
21 subject matter jurisdiction. (ECF No. 16.) Under 28 U.S.C. § 1441(a), a defendant
22 may remove to federal court "any civil action brought in a State court of which the
23 district courts of the United States have original jurisdiction." Federal question
24 jurisdiction, one type of original jurisdiction, exists when a civil action arises "under
25 the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Here,
26 Defendant's Notice of Removal invokes this type of jurisdiction. (Notice of Removal
27 ¶ 3, ECF No. 1.)
28 //

1

### 1.  Well-Pleaded Complaint Rule

Whether federal question jurisdiction exists typically "turns on the 'well-pleaded complaint' rule." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 9–10 (1983)). Under this rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). "In particular, the existence of a federal defense normally does not create statutory 'arising under' jurisdiction, and 'a defendant may not [generally] remove a case to federal court unless the *plaintiff's* complaint establishes that the case "arises under" federal law.' " *Davila*, 542 U.S. at 207 (alteration in original) (citation omitted) (citing *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149 (1908); *Franchise Tax Bd.*, 463 U.S. at 10).

The well-pleaded complaint rule is not absolute, however. *Davila*, 542 U.S. at 207. " '[W]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption,' the state claim can be removed." *Id.* (alteration in original) (quoting *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003)). Removal is appropriate in these circumstances because "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Id.* at 207–08 (alteration in original) (quoting *Anderson*, 539 U.S. at 8). "ERISA is one of these statutes." *Id.* at 208; *see also Fossen v. Blue Cross & Blue Shield of Mont., Inc.*, 660 F.3d 1102, 1107 (9th Cir. 2011) ("Ordinarily, federal question jurisdiction does not lie where a defendant contends that a state-law claim is preempted by federal law. But state-law claims may be removed to federal court if the 'complete preemption' doctrine applies." (citations omitted)).

//

//

//

1

**2.    Complete Preemption under ERISA**

2   "Congress enacted ERISA to 'protect . . . the interests of participants in

3   employee benefit plans and their beneficiaries' by setting out substantive regulatory

4   requirements for employee benefit plans and to 'provid[e] for appropriate remedies,

5   sanctions, and ready access to the Federal courts.' " *Davila*, 542 U.S. at 208 (quoting

6   29 U.S.C. § 1001(b)). Therefore, ERISA's purpose "is to provide a uniform

7   regulatory regime over employee benefit plans." *Id.*

8   To accomplish this purpose, ERISA includes "expansive pre-emption

9   provisions" that are designed to "ensure that employee benefit plan regulation 'would

10  be exclusively a federal concern.' " *Davila*, 542 U.S. at 208 (quoting *Alessi v.*

11  *Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523 (1981)). Further, ERISA provides a

12  comprehensive civil enforcement mechanism that is the "exclusive remedy for rights

13  guaranteed under ERISA." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 144

14  (1990). "This integrated enforcement mechanism, ERISA § 502(a), 29 U.S.C. §

15  1132(a), is a distinctive feature of ERISA, and essential to accomplish Congress'

16  purpose of creating a comprehensive statute for the regulation of employee benefit

17  plans." *Davila*, 542 U.S. at 208. In summarizing ERISA § 502(a), the Supreme Court

18  noted:

19          the detailed provisions of § 502(a) set forth a comprehensive civil
            enforcement scheme that represents a careful balancing of the need for
20          prompt and fair claims settlement procedures against the public interest
            in encouraging the formation of employee benefit plans. The policy
21          choices reflected in the inclusion of certain remedies and the exclusion
            of others under the federal scheme would be completely undermined if
22          ERISA-plan participants and beneficiaries were free to obtain remedies
            under state law that Congress rejected in ERISA. "The six carefully
23          integrated civil enforcement provisions found in § 502(a) of the statute
            as finally enacted . . . provide strong evidence that Congress
24          did *not* intend to authorize other remedies that it simply forgot to
            incorporate expressly."
25

26  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987) (quoting *Mass. Mut. Life Ins.*

27  *Co. v. Russell*, 473 U.S. 134, 146 (1985)). "Therefore, any state-law cause of action

28  that duplicates, supplements, or supplants the ERISA civil enforcement remedy

1   conflicts with the clear congressional intent to make the ERISA remedy exclusive
2   and is therefore pre-empted." *Davila*, 542 U.S. at 209.

3           To illustrate, in *Aetna Health Inc. v. Davila*, 542 U.S. 200, 205–06 (2004), the
4   plaintiffs brought separate suits in Texas state court against the administrators of
5   ERISA-regulated employee benefit plans. Both plaintiffs suffered injuries allegedly
6   arising from the plan administrators' decisions to not provide coverage for treatment
7   or services recommended by the plaintiffs' treating physicians. *Davila*, 542 U.S. at
8   204–05. The plaintiffs claimed the administrators failed to exercise ordinary care in
9   handling coverage decisions in violation of a duty imposed by the Texas Health Care
10  Liability Act, Tex. Civ. Prac. & Rem. Code Ann. §§ 88.001–88.003. *Id.* at 204–05.
11  The plan administrators removed the cases to federal court, arguing that the plaintiffs'
12  causes of action fell under the scope of ERISA's enforcement mechanism, ERISA §
13  502(a), and were therefore completely preempted. *Id.* at 205.

14          A unanimous Supreme Court agreed. *Davila*, 542 U.S. at 204. The Supreme
15  Court reasoned that the only relationship between the plaintiffs and the defendants
16  was the defendants' administration of the employee benefit plans in which the
17  plaintiffs participated. *Id.* at 211. Further, the Court rejected the plaintiffs' contention
18  that "the complained-of actions violate legal duties that arise independently of ERISA
19  or the terms of the employee benefit plans at issue." *Id.* at 212. The plaintiffs' claims
20  did not implicate legal duties that arise independently of ERISA because, although
21  the plaintiffs sued under a state statute, "interpretation of the terms of [the plaintiffs']
22  benefit plans forms an essential part of their [state law] claim, and [state law] liability
23  would exist here only because of [the defendants]' administration of ERISA-
24  regulated benefit plans." *Id.* at 213–14.

25          The Supreme Court also disapproved of the Fifth Circuit's emphasis on
26  whether the plaintiffs' claims sounded in tort or contract. *Davila*, 542 U.S. at 214. It
27  rationalized that "distinguishing between pre-empted and non-pre-empted claims
28  based on the particular label affixed to them would 'elevate form over substance and

– 7 –

allow parties to evade' the pre-emptive scope of ERISA simply 'by relabeling their contract claims as claims for tortious breach of contract.' " *Id.* (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)). "Nor can the mere fact that the state cause of action attempts to authorize remedies beyond those authorized by ERISA § 502(a) put the cause of action outside the scope of the ERISA civil enforcement mechanism." *Id.* at 214–15. Accordingly, the Supreme Court held ERISA completely preempted the plaintiffs' claims, and the cases were therefore removable to federal court. *Id.* at 215–22.

Thus, *Davila* demonstrates that complete preemption under ERISA § 502 is more of a jurisdictional doctrine, as opposed to simply a preemption doctrine. *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945–47 (9th Cir. 2009). A defendant seeking to justify removal on this basis must show that at least one of the state law causes of action is completely preempted by ERISA § 502(a). *See id.* at 945; *see also Abraham v. Norcal Waste Sys., Inc.*, 265 F.3d 811, 819 (9th Cir. 2001) ("Plaintiffs' complaint did not facially assert any federal claim; therefore, the original subject matter jurisdiction required to support removal exists only if ERISA completely preempted any of the state law claims."), *abrogated by Davila*, 542 U.S. at 214 n.4, 217–18, *on other grounds as recognized by Fossen*, 660 F.3d at 1112.

Following *Davila*, the Ninth Circuit has "distilled a two-part test for determining whether a state-law claim is completely preempted by ERISA § 502(a)." *Fossen*, 660 F.3d at 1107. A state-law claim is completely preempted if (1) "an individual, at some point in time, could have brought the claim under ERISA § 502(a)(1)(B)," and (2) "there is no other independent legal duty that is implicated by a defendant's actions." *Id.* at 1107–08 (quoting *Marin Gen. Hosp.*, 581 F.3d at 946). "Because this 'two-prong test . . . is in the conjunctive[,] [a] state-law cause of action is preempted by § 502(a)(1)(B) only if both prongs of the test are satisfied.' " *Id.* at 1108 (alterations in original) (quoting *Marin Gen. Hosp.*, 581 F.3d at 947). Further, although *Davila* discussed complete preemption under ERISA "by reference to §

– 8 –

502(a)(1)(B) but not the other subparts of § 502(a)," the "doctrine applies to the other subparts of § 502(a) as well." *Id.* (citing *Metro. Life*, 481 U.S. at 66).

Here, Defendant argues that removal was proper because all of Plaintiff's state law claims are completely preempted by ERISA. (ECF No. 15 at 1:22–3:28.) As indicated, federal question jurisdiction exists if at least one of Plaintiff's claims is completely preempted. *See Fossen*, 660 F.3d at 1109. Thus, the Court must "apply the two-part *Davila* test to determine whether ERISA § 502(a) completely preempts" any of Plaintiff's claims. *See id.*; *see also Melamed v. Blue Cross of Cal.*, 557 F. App'x 659, 661 (9th Cir. 2014) ("We evaluate whether an individual claim is completely preempted. If it is, the existence of other nonpreempted claims will not save the case from federal removal jurisdiction.").

### a.   Breach of Contract
#### (1)   First *Davila* Prong

The Court starts with Plaintiff's breach of contract claim because the Court ultimately concludes only this claim is completely preempted by ERISA. "The question under the first prong of *Davila* is whether a plaintiff seeking to assert a state-law claim 'at some point in time, could have brought [the] claim under ERISA § 502(a)(1)(B).' " *Marin Gen. Hosp.*, 581 F.3d at 947 (alteration in original) (quoting *Davila*, 542 U.S. at 210). This provision of ERISA provides that a plan participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Here, the Court finds Plaintiff could have brought his breach of contract claim under ERISA § 502(a)(1)(B). In pleading his breach of contract claim, Plaintiff first incorporates all of the factual allegations that the Court summarizes above. (Compl. ¶ 37.) He then alleges:

(1) "Plaintiff and Defendant entered into an agreement titled the 'Guardian Group Insurance Plan Benefits' (the 'Agreement')";

(2) "Plaintiff has performed all of the conditions of the Agreement";

(3) "Pursuant to the Agreement, Defendant promises and is required to obtain current signed authorizations for the release of Plaintiff's medical data";

(4) "Defendant is in violation of the Agreement" because it "wrongfully failed and refused to obtain a release and/or authorization signed by Plaintiff specific to [the] release of medical information to Select Physical Therapy and/or Austin with Select Medical"; and

(5) Plaintiff was harmed by Defendant's breach of the Agreement.

(*Id.* ¶¶ 38–43.) As seen, Plaintiff's breach of contract claim is expressly for breach of the Policy that Defendant is responsible for administering. There is no dispute that ERISA governs this Policy. *See* 29 U.S.C. § 1002(1) (defining covered plans to include "any plan . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise  . . . benefits in the event of . . . disability"). Further, Plaintiff was a "participant" under the Policy. *See Id.* § 1002(7) (defining "participant" as "any employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan"). Thus, Plaintiff—a participant under an ERISA-governed plan—is seeking to enforce an alleged contractual right under the plan—his right to have Defendant not disclose his medical information without first obtaining a signed authorization. (*See* Compl. ¶¶ 14, 38–42.)

Accordingly, Plaintiff could have brought his breach of contract claim under ERISA § 502(a)(1)(B). As mentioned, this section allows a plan participant like Plaintiff to bring a civil action "to enforce his rights under the terms of the plan." *See* 29 U.S.C. § 1132(a)(1)(B); *see also Davila*, 542 U.S. at 210 (noting that under ERISA § 502(a)(1)(B), "[a] participant or beneficiary can also bring suit generically to 'enforce his rights' under the plan"). ERISA § 502(a)(1)(B) essentially "allows an

action in the form of breach of contract, the contractual instrument being the [Policy]" that Plaintiff alleges Defendant breached. *See Nunez v. Monterey Peninsula Eng'g*, 867 F. Supp. 895, 906 (N.D. Cal. 1994). Plaintiff's breach of contract claim seeks to enforce one of his alleged rights under the terms of the Policy, and his claim therefore falls under the scope of ERISA § 502(a)(1)(B). *See* 29 U.S.C. § 1132(a)(1)(B).

### (2)   Second *Davila* Prong

Under the second prong of the *Davila* test, the court "must determine whether the state-law claim[] 'arise[s] independently of ERISA or the plan terms.' In other words [the court] must ask whether or not an 'independent legal duty . . . is implicated by [the] defendant's actions.' " *Fossen*, 660 F.3d at 1110 (citation omitted) (last alteration in original) (quoting *Davila*, 542 U.S. at 210, 212). This determination "requires a practical, rather than a formalistic, analysis because '[c]laimants simply cannot obtain relief by dressing up an ERISA benefits claim in the garb of a state law tort.' " *Fossen*, 660 F.3d at 1110–11 (alteration in original) (quoting *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005)).

Here, Plaintiff's breach of contract claim does not "arise independently of ERISA or the plan terms." *See Davila*, 542 U.S. at 212. Plaintiff cannot plead a cause of action for breach of contract under California state law without alleging the existence of a contract and the breach of the contract. *See, e.g.*, *Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal. App. 3d 887, 913 (1971). Hence, Plaintiff alleges the Policy is the contract between Plaintiff and Defendant and that its terms were violated by Defendant. (Compl. ¶¶ 38, 41–42.) His claim does "not merely reference the ERISA plan, [it] require[s] its construction because the contract allegedly breached is the ERISA plan itself." *See Bui v. Am. Tel. & Tel. Co. Inc.*, 310 F.3d 1143, 1152 (9th Cir. 2002). Consequently, this claim does not arise independently of ERISA or the plan terms—satisfying the second *Davila* prong. Because both prongs of the *Davila* test are satisfied, this claim is completely preempted. *See Fossen*, 660 F.3d at

1108; *see also, e.g.*, *Bui*, 310 F.3d at 1152 (holding ERISA preempts breach of contract claim predicated on the plan itself); *Dewalt v. G.E. Fin.*, No. 04-cv-1293-WDM-BNB, 2005 WL 6332668, at *2 (D. Colo. Aug. 4, 2005) (exercising removal jurisdiction over plaintiff's "claim for breach of a privacy contract" because the claim sought "to enforce his rights under the terms of the ERISA plan, the only contract alleged to exist between the parties").[1]

Nevertheless, Plaintiff argues his breach of contract claim is not preempted because it is "based on an independent duty of [Defendant] to protect the personal information of individuals." (ECF No. 16-1 at 17:8–18:13.) Although this argument may hold true for Plaintiff's tort and statutory claims, this argument is unpersuasive for his contract claim. A breach of contract claim must seek to enforce a duty created by the contract; therefore, any duty created by the Policy that Plaintiff seeks to enforce through a breach of contract claim does not arise independently of the ERISA-governed Policy.

Accordingly, because Plaintiff's breach of contract cause of action seeks enforcement of the terms of the Policy, the legal duty it seeks to enforce does not "arise independently of ERISA or the plan terms." *See Davila*, 542 U.S. at 212. Hence, the second *Davila* prong is satisfied for Plaintiff's breach of contract claim, and this claim is completely preempted by ERISA.

//

//

//

---

[1] The Court distinguishes *Providence Health Plan v. McDowell*, 385 F.3d 1168 (9th Cir. 2004) for the same reasons discussed by the district court in *GoDaddy.com LLC v. Monson*, --- F. Supp. 3d ---, 2016 WL 5109906, at *2 (D. Ariz. 2016). "[T]he *McDowell* Court addressed two independent breach of contract claims but did not distinguish between them in its analysis. In contrast to *McDowell* where the contract claim also sought to enforce the secondary contract between the insureds and their attorneys, [Plaintiff's] claim asserts only a breach of the plan itself." *See GoDaddy.com LLC*, 2016 WL 5109906, at *2. Thus, because here Plaintiff alleges only a breach of the Policy itself, and not also a secondary contract, the Court concludes *McDowell* does not compel a different conclusion in these circumstances.

### b.      Plaintiff's Tort and Statutory Claims

Plaintiff also brings claims for: (1) violation of California's Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56–56.37; (2) negligence, and (3) invasion of privacy. Unlike Plaintiff's breach of contract claim, these claims are not completely preempted by ERISA.

This conclusion is justified because the second *Davila* prong is not satisfied for any of these claims. As mentioned above, under this prong, the court "must determine whether the state-law claims 'arise independently of ERISA or the plan terms.' In other words [the court] must ask whether or not an 'independent legal duty . . . is implicated by [the] defendant's actions.' " *Fossen*, 660 F.3d at 1110 (citation omitted) (last alteration in original) (quoting *Davila*, 542 U.S. at 210, 212).

Starting with the invasion of privacy claim, Plaintiff alleges Defendant violated his "right to privacy under [the] California Constitution, Article 1, Section 1" by using his "private information properly obtained for a specific purpose for another purpose, or the disclosure of it to some third party." (Compl. ¶ 55(c).) *See also Hill v. National Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 39–40 (1994) (enumerating the elements of an invasion of privacy claim under the California Constitution, including "a legally protected privacy interest"). In addition to invoking his state constitutional right to privacy, Plaintiff invokes California tort law, including two of the common variations of the invasion of privacy tort adopted by the Restatement Second of Torts: (i) intrusion into private affairs and (ii) public disclosure of private facts. (Compl. ¶¶ 55(a)–(b).) *See also Hill*, 7 Cal. 4th at 24 (noting "California common law has generally followed Prosser's classification of privacy interests as embodied in the Restatement"). Thus, Plaintiff's invasion of privacy claim is based on an independent legal duty: Defendant's duty to not violate Plaintiff's right to privacy that is protected by both tort law and the state's constitution. *See Garrett v. Young*, 109 Cal. App. 4th 1393, 1410 (2003) (analyzing

1  invasion of privacy cause of action based on disclosure of medical information by

2  medical provider).

3       Further, the Court finds Plaintiff is not simply "dressing up an ERISA benefits

4  claim in the garb of a state law tort." *See Fossen*, 660 F.3d at 1111. Plaintiff's

5  invasion of privacy claim is not seeking ERISA benefits, which in this instance would

6  be long-term disability benefits, or damages resulting from an adverse benefits

7  determination. Rather, he seeks damages for an alleged invasion into his privacy

8  interest. Thus, his claim is unlike the claims in *Davila*, where the plaintiffs were

9  alleging an injury caused by a decision to not provide benefits under their respective

10  plans. *See Davila*, 542 U.S. at 204–05. Consequently, the Court concludes the second

11  *Davila* prong is not satisfied for Plaintiff's invasion of privacy claim. Accordingly,

12  ERISA does not completely preempt this claim.

13       For the same reasons, the Court concludes the second *Davila* prong is not

14  satisfied for Plaintiff's negligence claim. This claim, too, is based on Defendant's

15  obligation under California tort law to not breach its duty of care to Plaintiff by

16  disclosing his confidential medical information without his consent. The Court

17  similarly concludes this claim is not simply "an ERISA benefits claim" that has been

18  dressed up "in the garb of a state law tort." *See Fossen*, 660 F.3d at 1111. Plaintiff is

19  not seeking plan benefits or damages resulting from a denial of benefits via his

20  negligence claim. Therefore, the Court finds this claim is not completely preempted

21  by ERISA because the second *Davila* prong is not satisfied.

22       Last, Plaintiff alleges Defendant violated California's Confidentiality of

23  Medical Information Act ("CMIA"), Cal. Civ. Code §§ 56–56.37. The CMIA "is

24  intended to protect the confidentiality of individually identifiable medical

25  information obtained from a patient by a health care provider, while at the same time

26  setting forth limited circumstances in which the release of such information to

27  specified entities or individuals is permissible." *Brown v. Mortensen*, 51 Cal. 4th

28  1052, 1070 (2011) (citing *Loder v. City of Glendale* 14 Cal. 4th 846, 859 (1997);

*Heller v. Norcal Mut. Ins. Co.* 8 Cal. 4th 30, 38 (1994)). Given that Defendant is an insurance company and not a "provider of health care," Defendant disputes whether the CMIA even applies to it. *See* Cal. Civ. Code § 56.05(m) (providing that the CMIA's definition of a "Provider of health care" does not "include insurance institutions as defined in" California's insurance code). That said, assuming for the sake of argument that the CMIA is applicable, the statutory duty imposed by the CMIA is an independent legal duty, like those imposed by California tort law and the California constitution. *See Garrett*, 109 Cal. App. 4th at 1410 (noting the protections provided by the CMIA are "[i]n addition to any other remedies available at law . . . ." (quoting Cal. Civ. Code § 56.35)). Accordingly, this claim implicates an independent legal duty like Plaintiff's invasion of privacy and negligence claims. The Court again notes that this claim is not a disguised benefits claim. *See Fossen*, 660 F.3d at 1110–11. The Court thus concludes the second *Davila* prong is not satisfied for Plaintiff's CMIA claim, and it is not completely preempted by ERISA.

In sum, Plaintiff's breach of contract claim is completely preempted by ERISA, but his remaining three claims are not. Because ERISA completely preempts Plaintiff's state law breach of contract cause of action, this claim, although "pleaded in terms of state law, is in reality based on federal law." *See Davila*, 542 U.S. at 207–08 (quoting *Anderson*, 539 U.S. at 8). Therefore, this Court has original jurisdiction over this case because it arises "under the Constitution, laws, or treaties of the United States," *see* 28 U.S.C. § 1331, and Defendant has met its burden of demonstrating removal was proper, *see* 28 U.S.C. § 1441(a). Consequently, the Court exercises jurisdiction over this action and denies Plaintiff's motion to remand. *See* 28 U.S.C. § 1441(a).

### B. Failure to State a Claim—Conflict Preemption

Having exercised jurisdiction over this case, the Court turns to whether Defendant's motion to dismiss Plaintiff's claims should be granted. ERISA has two

16cv0885

separate preemption doctrines—complete preemption and conflict preemption. *Marin Gen. Hosp.*, 581 F.3d at 944–45. Complete preemption, which has a jurisdictional effect, is the doctrine the Court applied above to conclude remanding this action is not appropriate. "If complete preemption is present under a *Davila* analysis, and the case is properly in federal court, the next step is to determine whether the state law claims upon which federal jurisdiction has been conferred survive so-called 'conflict preemption' under ERISA § 514(a)." *Lodi Mem'l Hosp. Ass'n v. Tiger Lines, LLC*, No. 2:15-cv-00319-MCE, 2015 WL 5009093, at *5 (E.D. Cal. Aug. 20, 2015) (citing 29 U.S.C. § 1144(a)); *see also Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 948 (9th Cir. 2014) (explaining the distinction between complete preemption and conflict preemption).

Conflict preemption under ERISA arises from section 514(a) of the statute. *Marin Gen. Hosp.*, 581 F.3d at 944–45. This provision is "one of the broadest preemption clauses ever enacted by Congress." *Joanou v. Coca-Cola Co.*, 26 F.3d 96, 99 (9th Cir. 1994). It provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). "The Supreme Court has criticized the 'unhelpful text' of this ERISA preemption provision," *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1081 (9th Cir. 2009) (quoting *Cal. Div. of Labor Standards Enf't v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 324 (1997)), and the Ninth Circuit has "similarly remarked that the 'relate to' language has been the source of great confusion and multiple and slightly differing analyses," *id.* (citing *Abraham*, 265 F.3d at 819). That said, "the Supreme Court has instructed that a law relates to an employee benefit plan if it has either a 'connection with' or 'reference to' such a plan. This is a two-part inquiry." *Id.* at 1081–82 (citing *Ingersoll-Rand Co.*, 498 U.S. at 139; *Dillingham Constr.*, 519 U.S. at 324).

The first part of this inquiry is whether the state law has a "reference to" an employee benefit plan. *Paulsen*, 559 F.3d at 1082. "To determine whether a law has

1  a forbidden 'reference to' ERISA plans," the court considers "whether (1) the law

2  'acts immediately and exclusively upon ERISA plans,' or (2) 'the existence of ERISA

3  plans is essential to the law's operation.' " *Id.* at 1082 (quoting *Golden Gate Rest.*

4  *Ass'n v. City & Cty. of S.F.*, 546 F.3d 639, 657 (9th Cir. 2008)).

5      The second part of this inquiry is whether the state law has a "connection with"

6  an employee benefit plan. *Paulsen*, 559 F.3d at 1082. "[T]o determine whether a state

7  law has the forbidden connection," the court examines both "the objectives of the

8  ERISA statute as a guide to the scope of the state law that Congress understood would

9  survive, as well as to the nature of the effect of the state law on ERISA plans." *Id.*

10  (quoting *Dillingham*, 519 U.S. at 325). The Ninth Circuit has "employed a

11  'relationship test' in analyzing 'connection with' preemption, under which a state law

12  claim is preempted when the claim bears on an ERISA-regulated relationship, *e.g.*,

13  the relationship between plan and plan member, between plan and employer, [or]

14  between employer and employee." *Id.* (quoting *Providence Health Plan v.*

15  *McDowell*, 385 F.3d 1168, 1172 (9th Cir. 2004)).

16      Here, the Court already concluded above that Plaintiff's breach of contract

17  claim is completely preempted by ERISA. This claim is also conflict preempted by

18  ERISA because, although California state contract law does not reference employee

19  benefit plans, Plaintiff's breach of contract claim has a connection with an employee

20  benefit plan—the Policy. The claim alleges Defendant breached the terms of the

21  Policy, and it requires an analysis of the Policy's terms. *See, e.g.*, *Or. Teamster*

22  *Employers Tr.*, 800 F.3d at 1156 (holding the district court properly concluded a

23  breach of contract claim was conflict preempted where an "analysis of the terms of

24  the ERISA plan" was required and the complaint alleged the defendant "breached the

25  terms of the ERISA plan—not separate agreements"). Moreover, under the Ninth

26  Circuit's relationship test, this claim is preempted because it bears on an ERISA-

27  regulated relationship—the relationship between Plaintiff, a plan member, and

28  Defendant, the plan administrator. *See Paulsen*, 559 F.3d at 1082. Plaintiff's breach

1   of contract claim is therefore conflict preempted by ERISA under the second part of

2   the test for conflict preemption.

3        In sum, because Plaintiff's breach of contract claim has a forbidden connection

4   with an ERISA plan, it is preempted. Consequently, Plaintiff's claim fails to state a

5   claim upon which relief can be granted, and the Court grants Defendant's request to

6   dismiss this claim. *See* Fed. R. Civ. P. 12(b)(6). That said, the Court will grant

7   Plaintiff leave to amend this claim. *See* Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co.*

8   *v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

9

10                                       * * *

11       The Court has dismissed Plaintiff's one claim that provides a basis for federal

12  jurisdiction. Under 28 U.S.C. § 1367, the Court may "decline to exercise

13  supplemental jurisdiction" over Plaintiff's remaining claims if it "has dismissed all

14  claims over which it has original jurisdiction." *See also, e.g.*, *Sanford v.*

15  *MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("[I]n the usual case in which

16  all federal-law claims are eliminated before trial, the balance of factors to be

17  considered under the pendent jurisdiction doctrine . . . will point toward declining to

18  exercise jurisdiction over the remaining state-law claims."). Having dismissed

19  Plaintiff's claim that is completely preempted by ERISA, the Court declines to

20  exercise supplemental jurisdiction over Plaintiff's state law invasion of privacy,

21  negligence, and California CMIA claims. *See* 28 U.S.C. § 1367(c). Accordingly, the

22  Court dismisses these claims without prejudice.

23       Further, if Plaintiff files an amended complaint that does not allege a claim

24  under ERISA or otherwise present a federal issue—such as a state law claim that is

25  completely preempted by ERISA—the Court will *sua sponte* remand this action to

26  state court. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears

27  that the district court lacks subject matter jurisdiction, the case shall be remanded.");

28  *see also Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 338 (5th Cir. 1999)

(providing "a district court has discretion to remand a case involving solely arguably conflict-preempted causes of action" because those claims alone are not a basis for federal jurisdiction); Lee T. Polk, 2 ERISA Practice and Litigation § 11:46 Removal from State Court (2017) (discussing amendments to complaints that have been removed under ERISA's complete preemption doctrine and the impact of these amendments on subject matter jurisdiction).

## III.   CONCLUSION

In sum, Plaintiff's breach of contract claim is completely preempted by ERISA. This claim is completely preempted because (i) Plaintiff could have brought the claim under ERISA, and (ii) the claim seeks to enforce a duty stemming from the terms of the Policy. Because this claim is completely preempted by ERISA, the Court has jurisdiction over this action. Consequently, the Court **DENIES** Plaintiff's motion to remand (ECF No. 16).

In addition, Plaintiff's breach of contract cause of action fails to state a claim because it is conflict preempted by ERISA. The claim has a forbidden connection with an ERISA plan because it requires an analysis of the Policy's terms and bears on an ERISA-regulated relationship. The Court therefore dismisses this claim with leave to amend. Further, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims for invasion of privacy, negligence, and violation of California's CMIA. These three claims are dismissed without prejudice. Accordingly, the Court **GRANTS** Defendant's motion to dismiss (ECF No. 15). If Plaintiff chooses to file a First Amended Complaint, he must do so no later than **April 3, 2017**.

**IT IS SO ORDERED.**

**DATED:  March 13, 2017**

Hon. Cynthia Bashant
United States District Judge

– 19 –

16cv0885