# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES HELDT,<br><br>                          Plaintiff,<br><br>   v.<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA,<br><br>                          Defendant. | Case No. 16-cv-885-BAS-NLS<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No. 60]** |

      Presently before the Court is Defendant The Guardian Life Insurance Company of America's Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment, ("MSJ," ECF No. 60). Also before the Court is Plaintiff James Heldt's Response in Opposition to the Motion, ("Opp'n," ECF No. 63), and Defendant's Reply in Support of the Motion, ("Reply," ECF No. 70).[1]

---

[1] Plaintiff submitted objections to various portions of Defendant's Motion. (ECF No. 71.) The objections are all boilerplate and provide no supporting argument or law. (*See id.* (objecting to statements on the basis of "relevance, lack of foundation, hearsay, lack of personal knowledge, and argumentative" with no further detail).) "[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and are therefore "superfluous" in the summary judgment context, as a "court can award summary judgment only when there is no genuine dispute of material fact." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). The Court therefore **DENIES** these evidentiary objections.

The Court held oral argument on February 11, 2019. For the following reasons, the Court **GRANTS** Defendant's Motion.

I.  BACKGROUND

Defendant is a mutual insurance company. (Joint Statement of Undisputed Material Facts, "JSUMF," ECF No. 70-1, ¶ 1.) Defendant issued an insurance policy ("the Policy") and employer rider ("the Rider") to Plaintiff's employer, M-Resort. The policy provided disability insurance coverage. As part of his employment, Plaintiff participated in the group insurance plan that provided long-term disability insurance benefits. In October 2008, Plaintiff made a claim under Defendant's disability coverage. (*Id.* ¶ 6.) In making this claim, Plaintiff provided confidential information to Defendant. Defendant approved the claim in April 2009. (*Id.*) Plaintiff received a monthly disability benefit under the Group Policy. (*Id.* ¶ 3.) Defendant suspended benefits in June 2015. (*Id.* ¶ 7.) In January/February 2016, Defendant reinstated Plaintiff's benefits and paid all back benefits. (*Id.* ¶ 8.)

The Rider, which is a supplement to the Policy, provides that covered persons "[a]llow release of medical and/or income data needed to assess his or her claim," and agree to "[t]ake part in any medical, financial or vocational assessment as required by this plan." (ECF No. 60-5, at 72.) When a covered person provides notice of loss, Defendant requires, among other things, medical evidence, and the covered person's "signed authorization for release of medical and/or financial data by the sources of such data." (*Id.* at 73–74.)

On March 1, 2015, Plaintiff signed an authorization wherein he authorized Defendant to "release health and medical information to 'persons or organizations performing business or legal services in connection with my . . . claim or as may be lawfully required or permitted'" and that "I understand that Guardian will use the information obtained by this authorization to determine eligibility for insurance or eligibility for benefits under an existing plan." (*Id.* ¶ 20.) As detailed below, Defendant disclosed certain information about Plaintiff to three entities: Select

Medical ("Select"), Ethos Investigative Services ("Ethos"), and Select Physical therapy ("SPT"). (*Id.* ¶ 21.)

On May 28, 2018, Defendant sent a Service Request to Select, using a secure email line, requesting Select set up a Functional Capacity Evaluation ("FCE"). (*Id.* ¶ 22.) The Service Request provided Plaintiff's name, address, home phone number, date of birth, job title, and according to the Parties, a five-word statement of Plaintiff's diagnosis and his treating physician. (*Id.* ¶¶ 23–24.)[2] Defendant sent SPT a copy of a surveillance video of a man walking a dog on the sidewalk. (*Id.* ¶¶ 25–26.) The information provided to Select and SPT was disclosed only to Select's employee Shaunte Austin, who was to set up the FCE. (*Id.* ¶ 27.) On March 26, 2015, Defendant contacted Ethos to perform a surveillance of Plaintiff, and provided Ethos with Plaintiff's name, address, age, social security number, height, weight, marital status, and described Plaintiff's injury as ▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* ¶¶ 28–30 (medical information under seal).) The information was provided so the investigator could perform a background check on Plaintiff and identify Plaintiff during surveillance. (*Id.* ¶ 32.) There was no further dissemination of the information outside of the three entities. (*Id.* ¶ 34.)

Plaintiff was contacted by Shaune Austin and Plaintiff disclosed to Austin "confidential medical information" such as "numerous details about his current health, his diagnosis, and his past health history" as well as about his medications and disease. (*Id.* ¶¶ 38–41.) Plaintiff also believed Austin had access to his medical file from physical therapy he had attended in Las Vegas. (*Id.* ¶ 42.) A GoFundMe page was created for Plaintiff, which stated Plaintiff had surgery in 2008 and provided information about the surgery. (*Id.* ¶ 44.)[3] Plaintiff also made a public Facebook post about his "neuropathy pain." (*Id.* ¶ 45.)

---

[2] It is unclear what "five-word statement" the Parties refer to. On the cited exhibit, Plaintiff's diagnosis is listed as ▮▮▮▮▮▮▮▮▮▮▮▮ (ECF No. 65, at 46 (filed under seal).)

[3] It is disputed who started the GoFundMe page.

In April 2016, Plaintiff filed a state court complaint against Defendant. Defendant removed the complaint to this Court arguing the case arises under the Employee Retirement Income Security Act of 1974 ("ERISA"). Defendant moved to dismiss the complaint on the grounds that ERISA applied to the case and preempted all of Plaintiff's state law claims. The Court granted the motion and permitted Plaintiff to file an amended complaint. (ECF No. 24.) Plaintiff's operative complaint contains causes of action for violation of medical privacy, negligence, and invasion of privacy. (ECF No. 25.) Defendant moved to dismiss the amended complaint, and the Court denied the motion. (ECF No. 36.) Defendant moved for summary judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23.

If the moving party fails to discharge this initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970). If the moving party

meets this initial burden, however, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." (citing *Anderson*, 477 U.S. at 242, 252)). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). Such admissions may be presented in testimony of a party's own witnesses through declarations. *See* Fed. R. Civ. Pro. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

### III. ANALYSIS

#### A. First Cause of Action: Violation of the Confidentiality of Medical Information Act

Plaintiff's first cause of action is for a violation of the Confidentiality of Medical Information Act ("CMIA"), California Civil Code section 56.10 et seq. Defendant argues this claim fails for various reasons. The Court first analyzes whether CMIA applies to Defendant. Because the Court finds it does not apply, the Court does not analyze the remainder of Defendants' arguments.

CMIA prohibits health care providers, health care service plans, and contractors from disclosing confidential medical information without authorization. Cal. Civ. Code § 56.10. A health care provider is one licensed under various provisions of California law, or a clinic, health dispensary, or health facility. A health care provider "does not include insurance institutions as defined in subdivision (k) of Section 791.02 of the Insurance Code." *Id.* § 56.05(m). In turn, Section 791.02(k) defines insurance institution as a business engaged in the business of insurance. *See* Cal. Ins. Code. § 791.02(k). The definition of an insurance institution explicitly excludes health care service plans governed by the Knox-Keene Act. *Id.* A health care service plan is "any entity regulated pursuant" to the Knox-Knee Act. Cal. Civ. Code § 56.05(g).

Defendant previously moved to dismiss this cause of action, arguing CMIA did not apply to it. The Court denied the motion, reasoning Plaintiff alleged Defendant "offered plans which arrange for the provision of health care services . . . [including] Dental and Vision options, which meet the qualifications for basic health care services." (ECF No. 36, at 5.) Plaintiff alleged that he "obtained health care services through Defendant's health care service plan from on or about 2008." (ECF *Id.* at 5 (citing First Amended Complaint, "FAC," ECF No. 25, at ¶¶ 23, 24).) Accepting these allegations as true, the Court denied Defendant's motion to dismiss. The Court now finds there is no basis for Plaintiff's allegations.

It is undisputed that Defendant is "a mutual insurance company." (JSUMF ¶ 1.) Plaintiff has presented no evidence that Defendant provided Plaintiff with health care services. It is undisputed that while Defendant may have provided dental and vision insurance, this only "paid for covered charges incurred by healthcare professionals who provided the services to the participants." (*Id.* ¶ 13 (citing The Rider, ECF No. 60-5, at 92, 93, 119).) There is no evidence that Defendant provided any health care services or that Defendant is a health care service plan. Thus, CMIA

does not apply to Defendant and the Court **GRANTS** Defendant's Motion for Summary Judgment as to the first cause of action.

### B. Third Cause of Action: Invasion of Privacy[4]

Plaintiff claims Defendant violated his right to privacy under the California Constitution, Article 1, Section 1. (FAC ¶ 45(c).)[5] "The right to privacy guaranteed under the California Constitution gives rise to tort liability." *Meier v. United States*, 310 Fed. App'x 976, 979 (9th Cir. 2009) (citing *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633 (1994)). To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish (1) a specific, legally protected privacy interest, (2) a reasonable expectation of privacy, and (3) a "sufficiently serious" intrusion by the defendant. *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1232, (C.D. Cal. Mar. 2, 2017) (quoting *Hill*, 865 P.2d at 654–55). If a plaintiff satisfies these threshold requirements, the privacy interest must be balanced against a defendant's countervailing interests. *Hill*, 865 P.2d at 655–57.

#### 1. Legally Protected Privacy Interest

One category of legally protected privacy interest is the interest "in precluding the dissemination or misuse of sensitive and confidential information." *Hill*, 865 P.2d at 654. Medical information is confidential. *See Skinner v. Ashan*, CV 04–2380, 2007 WL 708972, at *2 (D.N.J. Mar. 2, 2007) (observing that medical records "have long been recognized as confidential in nature"); *Bd. of Med. Quality Assurance v. Gherardini*, 93 Cal. App. 3d 669, 678 (1979) ("A person's medical profile is an area of privacy infinitely more intimate, more personal in quality and

---

[4] The Court analyses Plaintiff's third cause of action before analyzing the second cause of action (negligence) because Plaintiff's negligence claim hinges on his allegation that Defendant violated his right to privacy by disclosing information.

[5] California Constitution, article I, section 1, provides, "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, *and privacy.*" (Emphasis added.) The privacy clause applies to private entities as well as government entities. *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633 (1994).

nature than many areas already judicially recognized and protected."). Plaintiff has satisfied the first element.

### 2. Reasonable Expectation of Privacy

Defendant argues Plaintiff has no reasonable expectation of privacy due to the authorizations signed by Plaintiff and due to Plaintiff's own actions in disclosing his information. Defendant argues Plaintiff knew Defendant would share Plaintiff's information with third parties and he "voluntarily consented to the claims process that included Guardian investigating the proof of loss." (Reply 5.)

Whether a plaintiff has a reasonable expectation of privacy in the circumstances is a mixed question of law and fact. *Hill*, 865 P.2d at 657. "A 'reasonable' expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms." *Id.* at 655 (citation omitted). "Even when a legally cognizable privacy interest is present, other factors may affect a person's reasonable expectation of privacy. For example, advance notice of an impending action may serve to 'limit [an] intrusion upon personal dignity and security' that would otherwise be regarded as serious." *Id.* (citing *Ingersoll v. Palmer*, 43 Cal. 3d 1321, 1346 (1987)). "[T]he presence or absence of opportunities to consent voluntarily to activities impacting privacy interests obviously affects the expectations of the participant." *Id.*

To establish a reasonable expectation of privacy, the plaintiff must have conducted himself or herself in a manner consistent with an actual expectation of privacy. This means he "must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant. If voluntary consent is present, a defendant's conduct will rarely be deemed 'highly offensive to a reasonable person' so as to justify tort liability." *Id*. at 648.

#### a. The Authorizations

Defendant agrees it disclosed information about Plaintiff to Select, Ethos, and SPT, but not to the public. (MSJ 9.) Defendant argues any disclosures "would have

been consistent with Guardian's role as a claim fiduciary, the express terms of the Rider and Policy and the authorization Plaintiff signed as part of his obligation to provide proof of loss." (*Id.*) One page of the Rider, titled "Long term disability income insurance," provides the duties of covered persons. (ECF No. 60-5, at 72.) Covered persons "[a]llow release of medical and/or income data needed to assess his or her claim," and "[t]ake part in any medical, financial or vocational assessment as required by this plan." (*Id.*) The document also provides Defendant's duties are to decide if a covered person is eligible for coverage and if the covered person meets the requirements for benefits, decide what benefits are to be paid, and interpret how the plan is to be administered. (*Id.* at 73.) When a covered person provides notice of loss, Defendant requires, among other things, medical evidence, and the covered person's "signed authorization for release of medical and/or financial data by the sources of such data." (*Id.* at 73–74.) The plan informs the participant that Defendant may ask the person to take part in a medical, financial, or vocational assessment if reasonably necessary. (*Id.* at 75.)[6]

Plaintiff signed authorization forms. According to Defendant, Plaintiff signed six authorization forms dated May 11, 2009; February 25, 2011; April 25, 2013; September 16, 2014; March 1, 2015; and August 18, 2017. (Corcoran Decl., ECF No. 60-5, ¶ 10.) The authorization dated March 1, 2015, is titled "Continuance of Long Term Disability." (ECF No. 60-6, at 171.) It is two pages long; the first page lists Plaintiff's information and the second page is titled "Authorization." It states,

> I understand that Guardian will use the information obtained by this authorization to determine eligibility for insurance or eligibility for benefits under an existing plan. Guardian will not release any information obtained by any person or organization except to reinsurance companies, the Medical Information Bureau, or other

---

[6] There is no evidence Plaintiff signed the Rider. But "[a]n insurance policy is, fundamentally, a contract between the insurer and the insured." *Stein v. Int'l Ins. Co.*, 217 Cal. App. 3d 609, 613 (1990). "Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation." *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003).

persons or organizations performing business or legal services in connection with any application, claim, or as may be lawfully required or permitted, or as I may further authorize.

(*Id.* at 172.) Plaintiff does not dispute that he signed the authorization forms. (Opp'n 10.) But he argues he did not do so knowingly and that he did not "expect[] his private medical information to be used in a hunt for information to withdraw treatment." (*Id.* at 6, 10.)[7] Plaintiff asks the Court to interpret "the validity and scope" of the authorization. (*Id.* at 6.)

The Insurance Information and Privacy Protection Act ("IIPPA"), California Insurance Code § 791.01, et seq., creates a right of privacy with respect to claim files maintained by insurance companies. The first paragraphs of section 791.13 provide that authorization is required before an insurance institution may disclose "any personal or privileged information about an individual collected or received in connection with an insurance transaction." Ins. Code § 791.13(a). But, the statute then lists a number of exceptions. These sections exempt the IIPPA's nondisclosure bar and authorization requirement for certain types of disclosures. *See Eastman v. Allstate Ins. Co.*, No. 14-cv-703-WQH-WVG, 2015 WL 4393287, at *6 (S.D. Cal. July 15, 2015) (finding the same).

For example, as relevant here, an insurance institution shall not disclose any personal information unless the disclosure is

> To a person other than an insurance institution, agent, or insurance-support organization, provided the disclosure is reasonably necessary . . . To enable the person to perform a business, professional or insurance function for the disclosing insurance institution, agent, or insurance-support organization or insured and the person agrees not to disclose the information further without the individual's written authorization . . . .

---

[7] As Defendant correctly points out, it was not providing Plaintiff any treatment, thus it would not and could not "withdraw treatment." Instead, Defendant intended to determine whether it would provide insurance coverage for the treatment.

Cal. Ins. Code § 791.13(b). This exception applies here because Defendant's disclosure of Plaintiff's information was to three companies who were to perform business functions. The Court finds disclosure of the information was reasonably necessary to enable the companies to perform their tasks. The information was not disseminated outside of the three entities. (JSUMF ¶¶ 21, 34.) Because the exception applies, no consent is required and no bar can be raised by IIPPA alone. *See Eastman*, 2015 WL 4393287, at *6. Thus, the Court finds Insurance Code section 791.13 permits Defendant to disclose Plaintiff's information in the manner it did so here.

Simply because the authorization complied with the law does not mean that Plaintiff cannot still claim an expectation of privacy. However, "[i]f voluntary consent is present, a defendant's conduct will rarely be deemed 'highly offensive to a reasonable person' so as to justify tort liability." *Hill*, 865 P.2d 633. "A plaintiff cannot have a reasonable expectation of privacy if she consented to the intrusion." *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016) (citing *Hill*, 865 P.2d 633).) Consent is effective "if the person alleging harm consented 'to the particular conduct, or to substantially the same conduct' and if the alleged tortfeasor did not exceed the scope of that consent." *Id.* at 1072 (quoting Restatement (Second) of Torts § 892A (1979).) Here, as noted above, while Plaintiff's scope of consent is broad, he voluntarily and clearly consented to Defendant releasing his personal information for the purpose of determining eligibility for benefits. Defendant released the information for this specific purpose, and the entities did not share the information beyond what was necessary to fulfill the purpose. *Contra id.* at 1073 (finding a question of material fact existed as to whether app users had a reasonable expectation of privacy when Yelp exceeded the scope of users' consent).

The Court finds Plaintiff could not have had a reasonable expectation of privacy in the medical information shared with Defendant due to the language of the insurance plan and the authorizations Plaintiff signed. Next, Defendant argues it is

further unreasonable for Plaintiff to expect privacy because he himself disclosed more information than did Defendant.

### b. Plaintiff's Own Disclosure of His Information

The plaintiff "must have conducted himself or herself in a manner consistent with an actual expectation of privacy" to maintain a reasonable expectation of privacy. *Hill*, 865 P.2d at 648; *see also Ortiz v. Los Angeles Police Relief Ass'n*, 98 Cal. App. 4th 1288, 1306 (Ct. App. 2002) (finding the plaintiff conducted herself consistent with an expectation of privacy when she told only one person about the private fact).

Plaintiff does not dispute that he provided Austin with protected medical information and documentation. Plaintiff informed Austin he had ███████████████████████████████████████████████████████████████████████████ (ECF No. 65, at 77–79, 88 (filed under seal).)[8]

Plaintiff argues this disclosure was "based on Austin's . . . representation that she was working with Guardian and had authority to facilitate Plaintiff's requests for accommodation to the [Functional Capacity Evaluation] for his disability." (Opp'n 2.) But Plaintiff now complains of Defendant's disclosure of information to entities that were also "working with" Guardian, therefore, this argument is illogical. Plaintiff knew who Austin was and her role in coordinating the FCE. His voluntary disclosure of this information, which goes far beyond what Defendant provided to

---

[8] Plaintiff also sent an email to various employees of Defendant, providing detailed medical information. (*See e.g.*, ECF No. 65, at 95.) The Court does not find this action inconsistent with an intent to keep the information private because Plaintiff knew Defendant was already in possession of his medical information.

Further, Defendant points out that certain confidential medical information was revealed in Plaintiff's publicly-filed opposition. While this is true, the information could have unintentionally been included by Plaintiff's attorney and the Court does not consider it in analyzing Plaintiff's expectation of privacy in the information.

the three entities, shows he had a less reasonable expectation of privacy in the information.

Finally, Plaintiff disseminated certain information on his Facebook page. *See* ECF No. 60-3, at 23 (Plaintiff commenting that the "neuropathy pain" is "so painful"). Plaintiff voluntarily shared the information with his Facebook friends knowing there is a possibility that his friends could share the information with others. *See generally Smith v. Maryland*, 442 U.S. 735, 743–44 (1979) (holding that there is no expectation of privacy in the telephone numbers one dials and explaining that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties"). Plaintiff's disclosure on Facebook was minimal, but the voluntary sharing of information on social media demonstrates Plaintiff did not have a reasonable expectation of privacy in that information.

In sum, "[i]f the undisputed material facts show no reasonable expectation of privacy . . . the question of invasion may be adjudicated as a matter of law." *Hill*, 865 P.2d 633 (citations omitted); *see also Pioneer Elecs. Inc. v. Superior Court of L.A.*, 150 P.3d 198 (2007). Given Plaintiff's signed authorization permitting Defendant's disclosure, followed by his own disclosure of the information, Plaintiff has not shown there is a disputed fact as to whether he had a reasonable expectation of privacy. Plaintiff therefore cannot prove this element and cannot succeed on his invasion of privacy claim.

The Court also finds the undisputed facts show Defendant's disclosure of information was not sufficiently serious to constitute a violation.

### 3. Seriousness of the Disclosure of Information

In analyzing a claim of invasion of privacy, the Court must consider the extent and gravity of the disclosure. *Hill,* 865 P.2d 633.

> No community could function if every intrusion into the realm of private action, no matter how slight or trivial, gave rise to a cause of action for invasion of privacy. . . . Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential

> impact to constitute an egregious breach of the social norms underlying the privacy right.

*Id.*

Defendant provided Select with Plaintiff's name, address, home phone number, date of birth, job title, and a "five-word statement of Plaintiff's diagnosis and the name of [his] treating physician." (JSUMF ¶¶ 23–24.)[9] Defendant also shared with SPT a video of a man walking a dog, and it is disputed whether this man is actually Plaintiff. (*Id.* ¶ 26.) Finally, Defendant provided Ethos with Plaintiff's name, address, age, social security number, height, weight, marital status, and his injury: ■■■■■■■■■■■■■■■■■■■■■■■■ (*Id.* ¶¶ 29–30 (filed under seal).) There is no evidence any further information was shared. The most confidential information from this list is about Plaintiff's medical condition, but the description was extremely minimal and was shared with only those necessary to perform their business function. Of course, Defendant knew much more information about Plaintiff's diagnosis and medical condition, but properly did not share this information.

"If the undisputed material facts show . . . an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *Hill*, 865 P.2d 633 (citations omitted). The Court finds as a matter of law that the disclosure of Plaintiff's information was not sufficiently serious to constitute an egregious breach of the social norms. The information shared by Defendant was minimal and does not meet this demanding standard. Thus, Plaintiff cannot establish an invasion of privacy claim.[10]

---

[9] *See supra* footnote 2.

[10] If a plaintiff meets the foregoing *Hill* criteria for invasion of a privacy interest, that interest must be balanced against other competing or countervailing interests. *Pioneer Elecs.*, 150 P.3d at 204 (citing *Hill*). Protective measures, safeguards and other alternatives may minimize the privacy intrusion. "For example, if intrusion is limited and confidential information is carefully shielded from disclosure except to those who have a legitimate need to know, privacy concerns are

The Court **GRANTS** Defendant's Motion for Summary Judgment for the invasion of privacy claim.

### C. Second Cause of Action: Negligence

Defendant argues it did not breach any common law duty of care and therefore Plaintiff's cannot prove his negligence claim. (MSJ 4.) To state a claim for negligence, the plaintiff must allege: (1) the defendant owed him a duty to exercise due care; (2) defendant breached that duty; (3) causation; and (4) damages. *See Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 477 (2001).

As the Court has found above that Defendants did not invade Plaintiff's privacy through the disclosure, the same result applies here. The undisputed material facts show that Defendant breached no duty to Plaintiff through its disclosure. The Court therefore **GRANTS** Defendant's Motion for Summary Judgment for the negligence claim.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment in its entirety. This concludes the litigation in this matter and the Clerk is instructed to close the file.

**DATED: February 15, 2019**

Hon. Cynthia Bashant
United States District Judge

---

assuaged." *Hill*, 865 P.2d at 656. "[T]rial courts necessarily have broad discretion to weigh and balance the competing interests." *Pioneer Elecs.*, 150 P.3d at 205.
   The Court finds that Defendant has competing interests in ensuring a claimant is deserving of disability benefits before granting them. But the Court does not perform a balancing test here because Plaintiff has not met the *Hill* criteria and because a balance of interests is likely inappropriate at a motion for summary judgment stage.